[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the judicial district of Danbury. Many of the facts that give rise to this action are not in dispute. The plaintiff, whose maiden name is Marilyn H. Winter, and the defendant were married on December 21, 1958, at New York, New York. The plaintiff has resided continuously in the state of Connecticut for at least twelve months immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are no minor children issue of this marriage. The plaintiff does not presently have any minor children. The parties do have two adult children. The state of Connecticut has not contributed to the support of either party. CT Page 1242
The parties entered into an agreement dated September 23, 1997, regarding the issues of alimony and division of assets. That agreement in part incorporated, by references, portions of a prior agreement entered into between the parties dated July 24, 1997. The court finds that the agreement of September 23, 1997, including the provisions incorporated therein by reference from the agreement of July 24, 1997, are fair and equitable and are, therefore, incorporated by reference in full into the judgment. The agreement of September 23, 1997, provided in paragraph eight as follows:
 8. The parties are unable to agree to the value of Electro Energy, Inc. and Martin G. Klein's interest therein. The value of Electro Energy, Inc. and Martin G. Klein's interest therein shall be the subject of the final hearing to begin on September 24, 1994, [sic 1997] before Judge Sidney Axelrod. The value of Martin G. Klein's interest in Electro Energy, Inc. shall be determined by the Court and 50% of said value shall be paid in cash by Martin G. Klein to Marilyn H. Klein within thirty (30) days of the decree of dissolution, unless otherwise ordered by the Court.
Electro Energy, Inc. was founded in March, 1992, by Martin Klein, former executive vice president of Energy Research Corp. Its mission is to conduct research and development (RD) and manufacture of advanced rechargeable batteries. Electro Energy, Inc. occupies a 3000 square foot facility in Danbury, Connecticut which contains a wet lab, electrode and cell fabrication areas, and a cycle test evaluation area with computer controlled autocyclers. Electro Energy, Inc.'s staff of approximately nine full and four part time employees include Martin Klein, CEO/President who has over thirty-five years experience in both alkaline and lithium rechargeable batteries, and administrative/secretarial resources. Electro Energy, Inc. has been eminently successful in winning Small Business Innovation Research ("SBIR") and other Government awards since its founding.
The value of Martin G. Klein's interest in Electro Energy, Inc. was testified to by a number of expert witnesses on behalf of the plaintiff and the defendant. The expert witnesses valued various patents that are owned by Electro Energy, Inc. and/or Martin Klein and, also, valued Electro Energy, Inc. as a separate entity, separate and apart from the various patents. CT Page 1243
A. ELECTRO ENERGY, INC. VALUE
Charles E. Coyne, the expert witness who testified for the plaintiff, gave an opinion of the value of Electro Energy, Inc. of $459,000, excluding the value of the patents that it owns. In determining the fair market value of Electro Energy, Inc., he used the direct capitalization method and the seller's discretionary cash flow method.
The method used by Charles E. Coyne, the plaintiff's expert witness, in evaluating Electro Energy, Inc. as stated in plaintiff's Exhibit 22 is as follows:
a. NORMALIZED EARNINGS
 Before applying the various income methods we have chosen to use in our valuation of EEI, we must restate the historical earnings reported by EEI to a level of earnings that would better represent what a hypothetical buyer would anticipate if EEI is managed to generate profits. EEI is a privately owned business and as such, it is not unusual for its owner to run the business in such a manner as to minimize its reported taxable income. The process we will summarize below is known as "Normalizing" or "Restating" the historical reported earnings.
 We segregated EEI's sales and associated expenses into two main business categories; SBIR/Government Projects
and Non-SBIR/Government Projects (see Table B). This allowed us to estimate what the normalized profit should be from a third-party or hypothetical buyers perspective on each category of business. We reviewed information from the Company's financial reports which provided sales and expense data by year and by specific project.
 On the SBIR/Government business we have applied a conservative 7% pre-tax profit rate to sales to determine normalized earnings before tax (EBT). The SBIR government contracts we reviewed allow EEI approximately a 7% profit margin. We reviewed general SBIR program guidelines available to the public on their web site, and discussed by telephone the typical SBIR program profit available to small businesses with an SBIR program staff member. Table B shows the Normalized EBT for 1996, 1995 and 1994. CT Page 1244
 On the Non-SBIR/Government business we removed certain legal fees and expenses which are directly related to EEI patents. We believe that these fees which have been expensed should be amortized over the anticipated life of the patents to to better match expenses with anticipated future sales. We have estimated the useful life of the patents at ten years and have amortized these patent related legal fees and expenses over this period. We have also added a reconciliation adjustment of $27,059 to the year end 1996 earnings reported to the Company's internally prepared financial statement to match EEI's 1996 federal tax return. Table B shows the Normalized EBT for 1996, 1995 and 1994.
 The total combined Normalized EBT is $278,829 in 1996, $46,598 in 1995 and $61,513 in 1994.
 WEIGHTED AVERAGED NORMALIZED EARNINGS
 On Table C we have developed two separate normalized earnings figures for use in the income methods of valuation we have selected for valuing EEI. The first earnings figure is the three-year weighted average net (after-tax) income. We weighted the most recent years results higher as the trend is one that suggest higher profitability in the future. The resulting three-year weighted average Normalized Net Income is $107,000 rounded.
 The second normalized earnings figure we developed on Table C is known as Seller's Discretionary Cash Flow ("SDCF"). We add back to Normalized EBT depreciation and owner's compensation. Again, we weighted the most recent years results higher as the trend is one that suggest higher profitability in the future. The resulting three-year weighted average Normalized SDCF is $269,000 rounded.
b. DIRECT CAPITALIZATION METHOD
 The direct capitalization of earnings method is based on the Gordon Growth Model (see formula below). It represents a technically correct simplification of the discounted future earnings method. The use of the capitalization of earnings method assumes that the subject Company's normalized earnings will grow into perpetuity at some estimated longterm average compound growth rate. CT Page 1245
The formula used in the Gordon Growth Model is as follows:
 Value = where: (Ke — G) CFty = cash flow G = future growth rate assumption Ke = cost of capital (WACC)
c. SELLER'S DISCRETIONARY CASH FLOW METHOD
 EEI is best classified as a small research and development business that is most likely to be purchased by someone desiring to buy a business as well as a job. As such, one of the best methods to value what a willing buyer would pay for this type of business, is to apply the Seller's Discretionary Cash Flow Method (SDCF) method. The SDCF method is commonly utilized by buyers and business brokers when placing a price on a small business such as EEI. Typical multiples applied to a small business like EEI would range from 1 to 3 times Normalized SDCF.
 The SDCF method is an adaptation of the single period capitalization of earnings method. The value is determined by normalizing the pretax earnings stream to project how much true discretionary cash flow would be available to a potential buyer. Once a normalized earnings stream is developed, a multiple is typically applied to the earnings stream to determine the value of the operating assets of the Company. The value of net working capital is added to this value producing a value of the business enterprise assets. Finally, the market value of any interest-bearing debt capital is subtracted from the value of the business enterprise assets to determine the value of the business equity capital of the Company.
 Given our analysis of EEI's financial and operating characteristics and economic and market conditions as of December 31, 1996, we applied a multiple of 1.4 times to the normalized discretionary cash flow we developed. . . .
 Table C summarizes the three-year weighted average normalized SDCF for EEI.
 The calculation of the indication of value from this method is displayed in the table below. CT Page 1246
 Normalized Seller's Discretionary Cash Flow (SDCF) $269,000
Valuation Multiple For Subject Company (per risk factor worksheet) 1.4 Value of Tangible and Intangible Operating Assets -------- (rounded) $376,600
 Add: Current Assets 189,316 Less: Value of Current Liabilities (excluding shareholder loan) 94,060 ------- Add: Value of Net Working Capital 95,256
-------- Value of Total Invested Capital (TIC)
(Excluding Value of Patents) $471,856
 Less: Market Value of Debt 0 Fair Market Value of Equity --------- (Excluding Value of Patents) $471,856 ========= --------- ROUNDED: $472,000 ======== 
The method by which Mr. Coyne arrived at the normalized seller's discretionary cash flow (SDCF) of $269,000 is shown on Table C as follows:
 1996 1995 1994 -----------------------
NORMALIZED EBIT $287,445 $50,079 $62,577
ADD-BACK: DEPRECIATION 11,946 6,168 5,817 --------------------------NORMALIZED EBDIT $299,391 $56,247 $68,394
ADD-BACK: M. KLEIN'S COMPENSATION 75,000 104,000 104,000 --------------------------SELLER'S DISCRETIONARY CASH FLOW (SDCF) $374,391 $160,247 $172,394
========================== WEIGHTING FACTORS 3 2 1 -------------------------- WEIGHTED RESULTS 1,123,172 320,494 172,394 ---------THREE-YEAR WEIGHTED AVERAGE (SDCF) $269,343
-------- CT Page 1247 ROUNDED: $269,000
========
The court does not agree with adding back in depreciation and does not agree with adding back in the defendant's compensation. With those two adjustments, the seller's discretionary cash flow is as follows:
 1996 1995 1994 ---- ---- ----
Normalized EBIT $287,445 $50,079 $62,577 Normalized EBDIT $287,445 $50,079 $62,577 Seller's Discretionary Cash Flow (SDCF) $287,445 $50,079 $62,577
Weigh-in Factors 3 2 1
Weighted Results $862,335 $100,158 $62,577
3-Year Weighted Average (Normalized Seller's Discretionary Cash Flow) $170,845
The formula as then applied to determine fair market value is as follows:
Normalized Seller's Discretionary Cash Flow (SDCF) $170,845 Valuation Multiple For Subject Company (per risk factor worksheet) 1.4 Value of Tangible and Intangible Operating Assets --------- (rounded) $239,183
Add: Current Assets 189,316 Less: Value of Current Liabilities (including shareholder loan bydefendant of $25,000) 119,060[*]
Add: Value of Net Working Capital $70,256 ---------- Value of Total Invested Capital (TIC) (Excluding Value of Patents) $309,439
Fair Market Value of Equity (Excluding Value of Patents) $309,439 ======== As can be seen from the above table, the fair market value of equity (excluding the value of the patents owned by EEI) is CT Page 1248 $309,439.
[*] This court is aware of the fact that the plaintiff's expert witness excluded the shareholders' loan by the defendant of $25,000 in arriving at the value of net working capital. The court does not agree with that exclusion and has, therefore, added it back in.
This court finds that the seller's discretionary cash flow method of determining fair market value with the three adjustments made is the proper method to determine fair market value and, therefore, finds that the fair market value of Electro Energy, Inc. is $309,439, excluding the value of patents.
B. PATENT VALUE
Electro Energy, Inc. holds five separate U.S. patents in various areas of patent methodology. These patents are as follows:
Patent No. Date of Patent Description
 5,393,617 Feb. 28, 1995 Bipolar Electrochemical Battery of Stacked Wafer Cells
 5,478,363 Dec. 26, 1995 Method of making Electrodes for Bipolar Electrochemical Battery
 5,552,243* Sept. 3, 1996 Bipolar Electrochemical Battery of Stacked Wafer Cells
 5,585,142 Dec. 17, 1996 Method for Preparing Conductive Electrochemically Active Material
 5,611,823 Mar. 18, 1997 Method for Fabricating a Battery Electrode